```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                          :
ZOETIS, INC.,                             :
                                          :
                              Plaintiff,  :
                                          :        21cv8319 (DLC)
                 -v-                      :
                                          :        OPINION AND ORDER
BOEHRINGER INGELHEIM VETMEDICA, GMBH,     :
                                          :
                              Defendant.  :
                                          :
----------------------------------------- X
```

APPEARANCES:

For plaintiff:
Keith A. Jones
Philip Laurence Hirschhorn
Panitch Schwartz Belisario & Nadel LLP
Two Commerce Square
2001 Market Street
Suite 2800
Philadelphia, PA 19103

For defendant:
Martin Brandon Jackson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

DENISE COTE, District Judge:

  Zoetis, Inc. ("Zoetis") has sued Boehringer Ingelheim Vetmedica, GmbH ("BIV") for taking what it considers improper deductions from royalty payments that BIV owed to Zoetis pursuant to a patent license agreement. Zoetis has moved for summary judgment on the issue of whether the license agreement

permits those deductions.  For the following reasons, Zoetis's motion is granted.

## Background

The following facts are undisputed unless otherwise noted. On January 1, 2010, in settlement of litigation, Zoetis's predecessors-in-interest and BIV entered into an agreement (the "License Agreement") in which the parties agreed to cross-license certain patents related to animal vaccines.  Pursuant to the agreement, BIV would pay royalties to Zoetis for vaccines that BIV sold.

Zoetis and BIV were not the only entities owning relevant patents.  In particular, Merial Limited ("Merial") also had a licensing agreement with BIV (the "Merial-BI License Agreement"), pursuant to which BIV would pay Merial royalties on its vaccine sales.  Recognizing that obligation to Merial, the License Agreement provided in § 4.4 that BIV could deduct from its royalty payments to Zoetis "an amount equal to any royalties paid by BIV under the Merial-BI License Agreement" for the relevant products, but in no event would such credit reduce the royalty amount below 60% of the amount due to Zoetis.  The Merial-BI License Agreement was defined as the "sublicense Agreement last signed by Merial and BIV on December 19, 2001,

and the First Restated Sublicense Agreement last signed by Merial and BIV on June 11, 2010."

BIV acquired Merial in 2017. In anticipation of that acquisition, Zoetis and BIV agreed to an amendment of the Licensing Agreement (the "First Amendment") in late 2016. This amendment added a clause to the end of § 4.4 stating that "no credit shall be applied with respect to any royalties paid to an Affiliate of BIV." The License Agreement defines an affiliate as "any entity, determined as of the relevant date, directly or indirectly, controlling, controlled by, or under common control" with a party. The First Amendment ensured that, after acquiring Merial, BIV could not make payments to Merial while continuing to deduct those payments from royalties owed to Zoetis.

Nevertheless, after BIV acquired Merial, BIV continued to take deductions under § 4.4 from the royalty payments it owed to Zoetis. On September 9, 2020, BIV sent a letter to Zoetis in which it explained that an internal audit had revealed it had "inadvertently" taken deductions from the payments it owed Zoetis from the second quarter of 2018 to the fourth quarter of 2019. Zoetis responded, asking why BIV's deductions from the first quarter of 2017 through the first quarter of 2018 were not also improper and prohibited by the First Amendment.

BIV did not reply to this inquiry until June 30, 2022, during discovery in this action. On that date, BIV provided Zoetis amended royalty reports covering the period from the first quarter of 2017 through the first quarter of 2018. Those reports appeared to categorize payments made by BIV to certain universities (the "Universities") as subject to § 4.4's royalty credit. BIV revealed that Merial had obtained licenses from the Universities, and accordingly Merial would pass on royalties it received from BIV to the Universities. BIV also provided an undated agreement executed between it and Merial, made retroactive to March 31, 2017, amending the First Restated Sublicense Agreement between Merial and BIV such that BIV would adopt Merial's payment obligations to the Universities, and make those payments directly to the Universities. This agreement was entitled Second Amendment to First Restated Sublicense Agreement. Accordingly, BIV contended that its payments to the Universities in 2017 and the first quarter of 2018 were made pursuant to the Merial-BI License Agreement.

Zoetis filed this action on October 8, 2021, bringing claims for breach of contract and for a declaration that BIV was not permitted to take deductions under § 4.4 of the License Agreement from the time it acquired Merial. The case was transferred to this Court on August 17, 2022. At a September 29

4

conference with the Court, the parties agreed that Zoetis' claims revolved almost entirely around the interpretation of § 4.4 of the License Agreement. The same day, the Court issued a scheduling Order for summary judgment briefing on that issue. Zoetis submitted its motion for summary judgment on October 21. The motion became fully submitted on December 9.[1]

## Discussion

Summary judgment may be granted only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To present a genuine issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence such that a reasonable jury could return a verdict for the nonmoving party." Horror Inc. v. Miller, 15 F.4th 232, 241 (2d Cir. 2021) (citation omitted). Material facts are those facts that "might affect the outcome of the suit under the governing law." Choi v. Tower Rsch. Cap. LLC, 2 F.4th 10, 16 (2d Cir. 2021) (citation omitted). In considering a motion for summary judgment, a court must "construe the facts in the light most favorable to the non-

---

[1] To the extent Zoetis seeks a determination on the amount of damages through this motion, BIV is correct that such a determination is beyond the scope of the court-ordered motion practice.

moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (citation omitted).

Under New York law, a contract "that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc., 7 F.4th 50, 56 (2d Cir. 2021) (citation omitted).[2] Additionally, "[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 133 (2d Cir. 2016) (citation omitted).

BIV does not argue that its nonpayment of royalties from the second quarter of 2018 onwards was permitted under § 4.4 License Agreement. Accordingly, the only issue is whether its deductions were permitted pursuant to § 4.4 from the first quarter of 2017 through the first quarter of 2018.

---

[2] The License Agreement contains a New York choice-of-law provision, and therefore must be construed according to New York law. Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 641 (2d Cir. 2016) ("Generally, New York courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." (citation omitted)). Additionally, "[t]he parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law." Chau v. Lewis, 771 F.3d 118, 126 (2d Cir. 2014) (citation omitted).

The plain language of the License Agreement, as amended by the First Amendment, did not allow BIV to deduct from its royalty payments to Zoetis any payments it made to Merial, or to cover Merial's obligations to pay other parties.  Section 4.4 states that BIV may only deduct payments made "under the Merial-BI License Agreement," and may not deduct payments "paid to an Affiliate of BIV."  To the extent that the payments to the Universities were made through Merial, BIV may not deduct them because they constitute "royalties paid to an Affiliate of BIV." And to the extent that BIV itself made the payments to the Universities, it may not deduct them because those payments were not made "under the Merial-BI License Agreement," which only contemplates payments from BIV to Merial.

BIV does not point to any ambiguity in the relevant terms of the License Agreement or the First Amendment to justify its deductions from the royalty payments due to Zoetis.  Instead, it contends that the enforcement of the parties' agreements, as negotiated and executed by them, would be commercially unreasonable or render § 4.4 superfluous.  None of BIV's arguments overcomes Zoetis's right to have the unambiguous terms of the contract enforced.

First, BIV argues that, if it is only allowed to deduct payments made to Merial under the Merial-BI License Agreement,

7

but is not allowed to deduct payments made to an "Affiliate" (such as Merial), then BIV in effect is not allowed to deduct any royalty payments at all after it acquired Merial. BIV contends that this reading of the First Amendment renders § 4.4 meaningless. Not so. Executed in anticipation of BIV's acquisition of Merial, the First Amendment prevented BIV from manufacturing a stream of payments to an affiliate it controlled in order to deduct those payments from amounts owed to Zoetis. But even after the acquisition, § 4.4 would still allow BIV to deduct royalty payments it had made to Merial before the acquisition was completed. And if BIV were to spin off Merial and its patents, § 4.4 would permit BIV to begin taking deductions again for payments made pursuant to the Merial-BI License Agreement. This amendment by sophisticated parties to a complex agreement, made in light of an impending corporate transaction, did not render any terms of the agreement meaningless, superfluous, or unenforceable.

BIV next points to the Second Amendment to the Merial-BI License Agreement, under which BIV adopted Merial's obligation to make royalty payments to the Universities. BIV argues that, because the Second Amendment amended the Merial-BI License, its payments to the Universities pursuant to the Second Amendment were also made pursuant to the Merial-BI Agreement. And

although BIV acknowledges that the Second Amendment was adopted after the payments to the Universities had been made, BIV argues that New York law allows parties to agree to contracts that affect their obligations retroactively.

The License Agreement, however, defines the term "Merial-BI License Agreement" to refer only to the original license "last signed by Merial and BIV on December 19, 2001, and the First Restated Sublicense Agreement last signed by Merial and BIV on June 11, 2010." This definition does not incorporate the Second Amendment. Moreover, even though parties generally may be able to contract to retroactively affect their own obligations, they may not ratify past actions to the detriment of a third party. See Restatement (Second) of Agency § 101(c); Pape v. Home Ins. Co., 139 F.2d 231, 235 (2d Cir. 1943) (referencing the "well settled rule that ratification does not date back to destroy intervening rights of third persons"). Accordingly, BIV could not retroactively recharacterize its royalty payments to the Universities in order to defeat Zoetis' right to royalty payments for sales of the same products.

Finally, BIV argues that an interpretation of § 4.4 that prevents it from deducting these payments leads to a commercially unreasonable result. BIV argues that, if it cannot deduct its payments to the Universities, then it will be

9

required to pay twice for its sales -- both to the Universities and the Zoetis. BIV argues that this is the outcome that § 4.4 of the License Agreement was intended to avoid.

Section 4.4 is not ambiguous, and because it is not ambiguous, it must be enforced as written. In any event, its enforcement does not lead to a commercially unreasonable result. Section 4.4 does not protect BIV from all double payments of royalties -- only from double payments on its obligations to Merial and Zoetis. The License Agreement does not provide BIV similar protections allowing it to deduct payments to any other parties. Nor is it a surprise that Zoetis has received a benefit from BIV's acquisition of Merial. The First Amendment anticipates that Zoetis would receive payments that it would not have previously received before BIV's acquisition of Merial, because it prevents BIV from deducting payments to Merial that it would have otherwise been able to deduct.

At the same time, BIV's acquisition of Merial provided BIV with the opportunity to obtain additional revenue from Zoetis. Zoetis also had a license agreement with Merial, requiring it to pay royalties for patents on some of the same vaccines at issue in the License Agreement. The License Agreement between BIV and Zoetis referred to the Merial patents and provided that, if BIV acquired a patent previously held by Merial, then BIV would

license that patent to Zoetis, with royalties no higher than those Zoetis had owed to Merial. This exchange represents a commercially reasonable result, and does not require the Court to ignore the plain meaning of § 4.4. Accordingly, BIV may not deduct its payments to the Universities from the royalties that it owed to Zoetis, and Zoetis's motion for summary judgment on that issue is granted.

## Conclusion

Zoetis's October 21, 2022 motion for summary judgment on the issue of whether BIV was permitted to take deductions from the royalties it owed to Zoetis is granted.

Dated: New York, New York
December 12, 2022

```
                             _____
                                     DENISE COTE
                             United States District Judge
```